IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN JAMAL WILLIFORD, | : | Civ. No. 1:23-CV-431 |
| Plaintiff, | : | |
| v. | : | (Magistrate Judge Bloom) |
| CARLISLE BOROUGH POLICE DEPARTMENT, et al., | : | |
| Defendants. | : | |

MEMORANDUM OPINION

I. Introduction

This case comes before us for consideration of two motions to dismiss, one filed by the Carlisle Borough Police Department ("CBPD"), and one filed by Defendants Jaime Keating and Courtney Hair LaRue. (Docs. 17, 27). The plaintiff, Steven Jamal Williford, brought this action against CBPD, Keating, LaRue, and former police officer Christopher Collare[1] of the CBPD. (Doc. 1). Williford's amended complaint appears to assert claims of false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983 arising out of his 2016

---

[1] It is unclear if service has been made on Mr. Collare, as no counsel has entered an appearance on his behalf.

prosecution and conviction in Cumberland County, Pennsylvania, for possession with intent to deliver heroin. (*See generally* Doc. 16).

After consideration, we conclude that the plaintiff's § 1983 claims against these defendants fail as a matter of law. Accordingly, we will grant the defendants' motions to dismiss.

## II. Background

Williford's amended complaint asserts that he was convicted in December of 2016 in Cumberland County of possession with intent to deliver heroin. (Doc. 16 ¶ 1). Williford had absconded from a work release program, which he was allegedly in due to a previous conviction on charges brought by Collare. (*Id.* ¶ 9). He was subsequently found in a hotel room, in which bags of heroin were discovered in the drop ceiling. (*Id.* ¶¶ 7, 13). Williford asserts that Collare lied in his affidavit for an arrest warrant and lied on the stand at his trial to convict Williford in 2016. (*Id.* ¶ 8).

Williford bases his false arrest, false imprisonment, and malicious prosecution claims on the fact that in 2020, Collare was indicted by a federal grand jury and was convicted in 2021 of Federal Program Bribery, Bribery, Distribution of Heroin, and False Statements. *See United States*

*v. Collare*, 1:20-CR-17 (Wilson, J). Thus, Williford urges us to infer that because Collare was convicted of these crimes in federal court, it necessarily follows that Collare engaged in the same conduct with respect to Williford's case in 2016. (Doc. 16 ¶¶ 8-9). Williford surmises that Collare could have planted the drugs in the hotel room where Williford was found, and further asserts that Collare lied on the stand during his trial. (*Id.*). He also alleges in a conclusory fashion that the CBPD knew of Collare's criminal conduct and did nothing to stop it, stating that "It's noway [sic], Mr. Collare, was committing crimes at this statue [sic] from 2011 to 2018, and no one knew about it." (*Id.* ¶ 21).

Williford was convicted in December of 2016 and was sentenced to a term of 3 to 10 years in prison. *See Commonwealth v. Williford*, CP-21-CR-0002358-2016. Williford spent roughly three and a half years in prison, including time for a probation violation related to this case. (Doc. 16 ¶ 12). However, following Collare's conviction in federal court, the state court granted Williford's petition for post-conviction relief in the form of a new trial, based on the Commonwealth's concession that Collare's criminal conduct for which he was convicted undermined the truth determining process in Williford's trial. (Doc. 16-1 at 1). While

3

Williford was scheduled for a new trial on November 1, 2021, the Commonwealth determined that it would not retry Williford for the offense, reasoning that Williford had already served a substantial period of incarceration, and ultimately requested the entry of a nolle prosequi on September 28, 2021. (*Id.* at 1-2).

In addition to bringing his false arrest, false imprisonment, and malicious prosecution claims against Collare and the CBPD, Williford also asserts his claims against Jaime Keating, the Assistant District Attorney who prosecuted his case, and Courtney LaRue, the Chief Deputy District Attorney who requested the nolle prosequi. Williford asserts that ADA Keating knew that Collare lied on the stand during Williford's trial. (Doc. 16 ¶ 15). He also contends that even if Keating did not know of Collare's conduct at the time of Williford's trial, Keating should have requested relief on Williford's behalf once Collare's misconduct came to light. (*Id.* ¶ 18). The only allegation against Defendant LaRue is that she requested the nolle prosequi in Williford's case, which he contends included false statements about the evidence against him. (*Id.* ¶¶ 23-24).

Thus, Williford filed this action on May 13, 2023, and filed an amended complaint on May 8, 2023, which is now the operative pleading. (Docs. 1, 16). The CBPD and Defendants Keating and LaRue subsequently filed the instant motions to dismiss, arguing that Williford's amended complaint fails to state a claim against them. (Docs. 17, 27). After consideration, we agree and will grant the defendants' motions to dismiss.

III. Discussion

A. Motion to Dismiss – Standard of Review

The defendants have filed motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

> As the Third Circuit Court of Appeals has aptly summarized:
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

B. <u>The Defendants' Motions to Dismiss will be Granted.</u>

The CBPD has filed a motion to dismiss, arguing that to the extent Williford asserts a *Monell*[2] claim against it, he has not set forth sufficient

---

[2] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

facts to establish § 1983 liability against CBPD. Defendants Keating and LaRue have also filed a motion to dismiss, arguing that they are entitled to absolute immunity from Williford's claims, and that his claims fail as a matter of law. After consideration, we agree and will dismiss the claims against these defendants.

1. **The Amended Complaint Fails to State a *Monell* Claim against the CBPD.**

Williford's claim against the CBPD appears to assert that the CBPD knew of Collare's criminal conduct but failed to stop it. The amended complaint asserts Williford's belief that it is impossible that no one at the CBPD knew of Collare's conduct, and that Collare's conduct made the CBPD look bad. (Doc. 16 ¶ 21). These vague and conclusory statements fall woefully short of what is needed to state a *Monell* claim against the CBPD.

A municipal entity may be liable for a constitutional violation under § 1983 if the violation was a direct result of the entity's policy, custom or practice. *Monell*, 436 U.S. at 695. However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a plaintiff must demonstrate a "direct causal link"

between the alleged constitutional violation and the municipal policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff may show that either an official policy of the municipality was the moving force behind the violation, or that the municipality had an informal custom such that it operated as the municipality's policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell*, 436 U.S. at 690. In either scenario, the plaintiff has the burden to show that the policy or custom was implemented or acquiesced in by a policymaker. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990).

Further, in cases where a plaintiff is alleging a failure to train officers, the plaintiff must demonstrate that the "municipality's failure to train police officers . . . amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. To establish such a claim, the plaintiff must demonstrate "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents," coupled with "circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."

9

*Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

In this case, we conclude that the plaintiff's amended complaint fails to establish *Monell* liability against the CBPD. As we have noted, the only allegations that Williford asserts against the CBPD is his belief that someone at the CBPD must have known of Collare's criminal conduct at the time of Williford's trial in 2016, and further, that Collare's conduct made the department look bad. (Doc. 16 ¶ 21). The amended complaint makes no allegations that a policymaker at the CBPD had either an official policy or an informal custom of allowing police officers to engage in criminal conduct. Nor does Williford allege that anyone, including supervisors, knew of Collare's criminal conduct while it was ongoing; he merely speculates that individuals at the CBPD should have known.[3]

---

[3] We note that Williford's opposition to the CBPD's motion to dismiss attempts to insert new facts to show that the CBPD knew that Collare was committing criminal conduct and did nothing to stop it. However, even though the plaintiff is proceeding *pro se*, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Moreover, Williford was given an opportunity to amend his complaint and failed to add these factual averments.

Thus, it appears Williford is attempting to impose *respondeat superior* liability on the CBPD because it employed Collare at the time of the alleged constitutional violations. This is simply insufficient to state a claim under *Monell* against the CBPD. Accordingly, this claim will be dismissed.

2. <u>The Plaintiff's § 1983 Claims against Keating and LaRue Fail as a Matter of Law</u>.

Similarly, we conclude that the plaintiff's claims against Keating and LaRue fail as a matter of law. As to ADA Keating, Williford alleges that Keating knew that Collare lied on the stand during Williford's trial and failed to correct him. He further asserts that while Keating may not have known of Collare's criminal conduct at the time of Williford's trial, Keating should have requested relief for Williford once this criminal conduct came to light. With respect to LaRue, Williford asserts that she provided a false statement in her request for a nolle prosequi regarding the evidence against Williford.

At the outset, to the extent Williford is attempting to assert his false arrest and false imprisonment claims against these defendants, it is well

---

Accordingly, we will not consider the new factual allegations set forth in the plaintiff's brief at this stage.

settled that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs[.]" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, there is no indication from the amended complaint that these two defendants were involved in any way in Williford's arrest and detention. Accordingly, these claims fail as a matter of law.

Further, it is well established that prosecutors are entitled to absolute immunity from malicious prosecution claims involving their activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). This is true even where a prosecutor is alleged to have knowingly used false testimony at trial. *Id.*; *Hauptmann v. Wilentz*, 570 F. Supp. 351, 366 (D.N.J. 1983) (collecting cases). With respect to the allegation that Keating should have requested relief after Collare's conduct came to light, it has been established that prosecutorial immunity "applies to the adversarial acts of prosecutors during post-conviction proceedings . . . where the prosecutor is personally involved . . . and continues his role as an advocate[.]" *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006) (citations and internal quotations omitted). Accordingly, we

conclude that Keating is entitled to absolute immunity from the claims Williford asserts against him.

With respect to Williford's claim against LaRue, we cannot conclude that Williford has stated a malicious prosecution claim. First, to the extent Williford is challenging LaRue's actions as they pertain to his criminal prosecution, LaRue, like Keating, is entitled to absolute immunity from this claim. Moreover, immunity aside, Williford's amended complaint fails to establish several key elements of a malicious prosecution claim. To state a claim for malicious prosecution, Williford must allege facts to establish that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty[.]" *Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) (citations omitted)).

Notably missing from Williford's complaint are any allegations that the proceeding was initiated against him by these defendants without

probable cause or for a purpose other than bringing him to justice. Rather, the gravamen of Williford's complaint relates to alleged conduct by Collare, not Keating or LaRue. Accordingly, we conclude that even if these defendants were not entitled to absolute immunity, the plaintiff's malicious prosecution claim against them fails as a matter of law.

While we recognize that Williford is a *pro se* litigant and generally would be entitled to an opportunity to amend his complaint, *see Fletcher-Hardee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 253 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), in our view the claims are fundamentally flawed in several ways that cannot be cured by further amendment. Accordingly, we will dismiss these claims against these defendants with prejudice.

## IV. Conclusion

For the foregoing reasons, the defendants' motions to dismiss (Docs. 17, 27) will be GRANTED, and the amended complaint will be dismissed with prejudice as to CBPD, Jaime Keating, and Courtney Hair LaRue.

An appropriate order follows.

Submitted this 13th day of November 2023.

*s/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge
