IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN JAMAL WILLIFORD,  : Civ. No. 1:23-CV-431
           :
  Plaintiff      :
           :
    v.      : (Chief Magistrate Judge Bloom)
           :
CHRISTOPHER COLLARE,   :
           :
  Defendant.     :

## MEMORANDUM OPINION

## I. Introduction

This case comes before us for consideration of a motion to dismiss the plaintiff's amended complaint filed by the defendant, Christopher Collare, a former detective with the Carlisle Borough Police Department ("CBPD") in Cumberland County, Pennsylvania. (Doc. 61). The plaintiff, Steven Jamal Williford, sued Collare alleging claims of false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983. (Doc. 60). These claims arise out of Williford's 2016 prosecution for possession with intent to deliver heroin. (*Id.*). Williford points to Collare's 2021 criminal convictions as evidence that Williford's arrest and prosecution, in which Collare was both an affiant and a critical witness,

were corrupt, and therefore Williford's arrest, prosecution, and imprisonment violated his constitutional rights. (*Id.*).

Collare filed a previous motion to dismiss, which we granted after concluding Williford's complaint failed to state a claim. (Doc. 46). Given that Williford is proceeding *pro se*, we permitted him one final opportunity to amend his complaint. (Doc. 58 at 9-10). Williford was required to amend his complaint within 20 days of our dismissal order on March 12, 2025. (*Id.* at 10). Under the prisoner mailbox rule, "a document is deemed filed on the date it is given to prison officials for mailing." *Pabon v. Mahanoy*, 654 F.3d 385, 391 n. 8 (3d Cir. 2011). While the court did not receive Williford's amended complaint until April 8, 2025, it appears Williford gave his amended complaint to prison officials for mailing on March 27, 2025. (Doc. 60 at 1). Thus, Williford's amended complaint is considered timely.

Collare now moves to dismiss Williford's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 61). After consideration, we conclude Williford has failed to allege sufficient facts to support his claims and will grant the defendant's motion to dismiss.

## II.    <u>Background</u>

In April 2015, an arrest warrant was issued for Williford after he absconded from a Cumberland County Prison work release program. (Doc. 60 ¶ 3). On April 9, 2015, then-detective Christopher Collare used a confidential informant to conduct a controlled buy of heroin in an attempt to apprehend Williford. (*Id.* ¶ 4). While a sale of heroin took place, Williford never appeared at the controlled buy. (*Id.*). On April 16, 2015, Williford was located and arrested by Collare at a hotel, and heroin was found in the drop ceiling of the hotel room. (*Id.* ¶ 6).

Williford was convicted by a jury in 2016 of possession with intent to deliver heroin and sentenced to three to ten years' imprisonment. *Commonwealth v. Williford*, No. CP-21-CR-0002358-2015 (Cumberland Ct. Com. Pl.).[1]  In 2020, Collare was indicted for criminal conduct pursuant to his activities while employed as a detective for the CBPD. *United States v. Collare*, 1:20-CR-17, Doc. 1.  He was eventually found guilty by a jury on nine counts, including false statements, bribery, and

---

[1] We may take judicial notice of the public docket in Williford's underlying state criminal case. *Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.").

distribution of heroin, all connected to his conduct as a police detective. *Id.*, Doc. 99.

Following Collare's conviction, Williford filed a Post-Conviction Relief Act ("PCRA") petition, and he was granted a new trial. *Williford*, No. CP-21-CR-0002358-2015. Before the trial could take place, the Commonwealth petitioned for and was granted *nolle prosequi. Id.* In its petition, the Commonwealth indicated "Collare's involvement in the investigation and chain of custody call in to question the amount of the heroin found in [Williford's] hotel room." (Doc. 60-1 at 1). The Commonwealth further noted that while it "believes that [Williford] committed this offense, the Commonwealth also believes that the truth determining process has been unquestionably altered by Collare's actions" and Williford "already served a substantial period of incarceration for this offense and if re-convicted at trial would likely not serve any additional incarceration or supervision." (*Id.*).

Williford sued Collare, Assistant District Attorneys ("ADAs") Jamie Keating and Courtney Hair LaRue, and the CBPD. (Doc. 1). He later amended his complaint. (Doc. 16). Keating, LaRue, and the CBPD filed motions to dismiss, which we granted. (Docs. 17, 27, 39). Collare then

moved to dismiss. (Doc. 46). We granted Collare's motion but permitted Williford one final opportunity to amend his complaint. (Doc. 58).

Williford then filed his second amended complaint. (Doc. 60). Williford alleges Collare "fabricated evidence, falsified evidence, and used false statements" to establish probable cause for Williford's arrest and convict him. (*Id.* ¶ 1). Specifically, Williford alleges Collare planted the heroin found in the hotel room and lied when testifying at trial. (*Id.* ¶¶ 2, 5-6). Collare now moves to dismiss Williford's second amended complaint. (Doc. 61). The motion is fully briefed and ripe for resolution. (Docs. 62, 63, 64, 65).

After consideration, we conclude Williford fails to allege sufficient facts to state a claim upon which relief can be granted. Accordingly, we will grant Collare's motion to dismiss.

## III. Discussion

### A. Motion to Dismiss – Standard of Review

The defendant has filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for

6

relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

However, the court may not rely on any other part of the record when deciding a motion to dismiss.  *Jordan*, 20 F.3d at 1261.

## B. <u>The Defendant's Motion to Dismiss will be Granted.</u>

In support of his motion to dismiss, Collare argues that the *nolle prosequi* in Williford's case was not a favorable termination and therefore Williford's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Doc. 62 at 6-8).  Collare also argues Williford's false arrest and false imprisonment claims are barred by the statute of limitations, which began to run on the date of Williford's arrest and the date of Williford's arraignment, respectively.  (*Id.* at 5-6).  Finally, Collare argues Williford has not alleged sufficient facts to support his claims of false arrest, false imprisonment, and malicious prosecution.  (*Id.* at 8-12).

We conclude that while Williford's claims are not barred by *Heck* because the *nolle prosequi* in Williford's case was a favorable termination, his claims for false arrest and false imprisonment are barred by the statute of limitations.  We further conclude that Williford's claims for malicious prosecution, false arrest, and false imprisonment fail because he has not alleged sufficient facts to establish a lack of probable

cause for his arrest.  Therefore, we will grant the defendant's motion to dismiss.

### 1. *Heck* does not Bar Williford's Claims.

Collare argues that all three claims are barred from relief by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  The *Heck* Court created the "favorable termination rule," which bars a Section 1983 plaintiff from litigating claims that if successful would necessarily impugn the validity of his conviction unless he can show that the conviction has been reversed, expunged, declared invalid, or otherwise called into question by a state or federal court.  *Heck*, 512 U.S. at 486-87.  The Third Circuit has interpreted *Heck* to mean that the bar to litigation should not apply where the plaintiff was "innocent of the crime charged in the underlying prosecution."  *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000).

The favorable termination rule is often litigated, particularly where a conviction or sentence was disposed of in a manner not explicitly considered in *Heck*, such as the issuance of a *nolle prosequi*.  "[W]hile a grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement. . ., not all cases where the prosecutor abandons

criminal charges are considered to have terminated favorably." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d. Cir. 2002). Because of the potential ambiguity of a *nolle prosequi*, the Third Circuit has explained that application of the favorable termination rule is a fact specific consideration, and "the result depends on the particular circumstances." *Kossler v. Cristanti*, 564 F.3d 181, 188 (3d Cir. 2009).

For example, in *Donahue*, it was clear that the *nolle prosequi* did not act as a favorable termination because "[t]he prosecutor simply reasoned that Donahue was not likely to receive any additional jail time if convicted in a retrial, and concluded that further prosecution was therefore not an appropriate use of limited resources." *Donahue*, 280 F.3d at 384. Contrast that with the result in *Geness v. Cox*, 902 F.3d 344 (3d Cir. 2018), where the district attorney issued *nolle prosequi* because he felt the prosecution would be "unable to prove the case" and there were "substantive evidentiary issues in this matter that likely could and would impair the commonwealth's ability to meet its burden of proof." *Geness*, 902 F.3d at 356. The *Geness* Court found that, while the prosecution did not use the phrase "innocent" as contemplated in *Hector*, the facts above "did reflect a favorable termination." *Id.* These cases instruct that, while

10

a finding of innocence is plainly indicative of a favorable termination, it is not a requirement. Further, in the context of a *nolle prosequi*, a conceded inability to meet the government's burden of proof can be sufficient to show favorable termination, but a prosecution abandoned for reasons of judicial or prosecutorial economy is unlikely to constitute a favorable termination.

Here, Williford was in the process of a direct appeal of his conviction when Collare was convicted in June 2021. *Williford*, No. CP-21-CR-0002358-2015; *U.S. v. Collare*, 1:20-CR-17, Doc. 99. Williford's PCRA petition was granted on September 7, 2021, because of Collare's conviction. *Williford*, No. CP-21-CR-0002358-2015. On September 28, 2021, the Cumberland County District Attorney filed a *nolle prosequi* explaining that Collare "was both the affiant and a critical witness in the Commonwealth's case," "part of the chain of custody," and that while the Commonwealth felt that "[Williford's] case was not directly implicated, Collare's criminal activity took place at the time of the defendant's crimes." (Doc. 60-1 at 1). The ADA ultimately determined that despite having convicted Williford at the initial trial, "the interest of justice would not be served by re-trying Defendant." (*Id.*). She explained that

Collare's conviction called into question the amount of contraband discovered, and that while "the Commonwealth believes that the Defendant committed this offense, the Commonwealth also believes that the truth determining process has been unquestionably altered by Collare's actions." (*Id.*). In addition, the ADA noted "if re-convicted at trial [Williford] would likely not serve any additional incarceration" as he had already served a substantial period of incarceration. (*Id.*).

Ultimately, while the ADA did not endorse Williford's innocence and resource conservation might have been a motivating factor in her decision, she appeared to concede that Collare's convictions polluted so much of the case that the prosecution could not meet their evidentiary burden. Thus, the record strongly suggests the ADA dropped the case because she was uncertain in her ability to prove it beyond a reasonable doubt. For that reason, out of an abundance of caution, we conclude that the *nolle prosequi* constitutes a favorable termination, and *Heck* does not bar Williford's claims.

## 2. Williford's False Arrest and False Imprisonment Claims are Time-Barred.

While *Heck* does not bar Williford's false arrest and false imprisonment claims, the statute of limitations does. State statutes of

limitations for personal injury apply to claims brought under Section 1983. *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003). Pennsylvania's statute of limitations requires plaintiffs to bring false imprisonment, false arrest, and malicious prosecution claims within two years. 42 Pa. Cons. Stat. § 5524. Federal law governs the accrual date of a Section 1983 cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

"[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. As for false imprisonment, "limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends," which occurs "once the victim becomes held pursuant to [legal] process— when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 389-90.

Here, Williford was arrested on April 16, 2015, and formally arraigned on November 24, 2015. *See Williford*, No. CP-21-CR-0002358-2015. Williford filed his complaint in this case on March 13, 2023, well

13

after the expiration of the two-year statute of limitations for both his false arrest and false imprisonment claims. As such, these claims are time-barred.

It might appear that *Heck* tolls the statute of limitations because it barred Williford from raising his claims until he received a favorable termination. But while a plaintiff whose timely-filed claims were dismissed under *Heck* "will likely be entitled to some period of tolling, thus allowing him to re-raise his claims in a timely § 1983 action" if he invalidates his conviction at a later date, Williford did not file suit until after the statute of limitations had expired, so he is not entitled to any tolling. *See e.g.*, *McGriff v. Quinn*, 2023 WL 1965051, at *6 (D. Del. Feb. 13, 2023) (citing *Wallace*, 549 U.S. at 395 n.4).

With respect to Williford's malicious prosecution claim, such claims do not accrue until the criminal proceedings against the plaintiff are "terminated in the plaintiff's favor." *Daniels v. City of Phila.*, 296 F. Supp. 3d. 722, 724 (E.D. Pa. 2017) (quoting *Heck*, 512 U.S. at 487). On the date of the favorable termination, the two-year statute of limitations begins to run. *Id.* at 724-25. As we have explained, we conclude the *nolle prosequi* constitutes a favorable termination that enables Williford to

14

bring a malicious prosecution claim.  Therefore, the statute of limitations

began to run when the *nolle prosequi* was entered on September 29, 2021.

(Doc. 60-1 at 2).  Williford filed his complaint on March 13, 2023, within

the two-year statute of limitations, and his malicious prosecution claim

is timely.

### 3. Williford Fails to State a Claim for False Arrest, False Imprisonment, or Malicious Prosecution.

Even if Williford's false arrest and false imprisonment claims were

timely, he fails to allege sufficient facts to state a claim for false arrest or

false imprisonment.  He also fails to allege sufficient facts to state a claim

for malicious prosecution.  As we have explained, to survive a motion to

dismiss, a plaintiff must allege sufficient facts for the court to see the

plaintiff has a "plausible claim for relief."  *Iqbal*, 556 U.S. at 679.  Thus,

Williford's complaint needs to outline facts that, if believed, would tend

to show the elements of false arrest, false imprisonment, and malicious

prosecution.

"To bring a claim for false arrest, a plaintiff must establish (1) that

there was an arrest; and (2) that the arrest was made without probable

cause."  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).  In a

similar vein, a plaintiff alleging false imprisonment "must establish: (1)

that he was detained; and (2) that the detention was unlawful." *Id.* at

202.  Finally, to state a malicious prosecution claim, a plaintiff must

establish:

> (1) the defendant initiated a criminal proceeding; (2) the
> criminal proceeding ended in [the plaintiff's] favor; (3) the
> defendant initiated the proceeding without probable cause; (4)
> the defendant acted maliciously or for a purpose other than
> bringing the plaintiff to justice; and (5) the plaintiff suffered
> deprivation of liberty consistent with the concept of seizure as
> a consequence of a legal proceeding.

*Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014).

Thus, for all three of these claims, Williford must allege facts

establishing a lack of probable cause.  Probable cause to arrest exists

when the facts known to the officer "are sufficient in themselves to

warrant a reasonable person to believe that an offense has been or is

being committed by the person to be arrested."  *Orsatti v. N.J. State

Police*, 71 F.3d 480, 483 (3d Cir. 1995).  Probable cause "requires more

than mere suspicion" that a crime has occurred but "does not require that

the officer have evidence sufficient to prove guilt beyond a reasonable

doubt."  *Orsatti*, 71 F.3d at 482-83.

Williford has not alleged sufficient facts to establish a lack of

probable cause.  Williford claims Collare "fabricated evidence, falsified

evidence, and used false statements to get a (sic) arrest and conviction." (Doc. 60 ¶ 1). Specifically, Williford alleges that he believes Collare planted the drugs found in the hotel room and lied in the affidavit of probable cause and in his testimony at trial. (*Id.* ¶¶ 2, 5-6). Williford asserts that these allegations, coupled with the fact that Collare was later convicted of similar conduct, necessarily mean that Collare lacked probable cause to arrest and prosecute him.

In our view, these allegations are "bare assertions" that are "conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 680-81. To support his claim that Collare planted the heroin found in the hotel room, Williford relies on the language in the *nolle prosequi* that Collare's convictions "call in to question the amount of the heroin found in Defendant's hotel room." (Doc. 60 ¶ 2). He appears to believe that this statement affirmatively proves that "Mr. Collare committed crimes against the plaintiff." (*Id.* ¶ 8). But this statement does not enable us to reasonably infer Collare planted the heroin or lacked probable cause for the arrest since "[e]vidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d

Cir. 1994).  Williford also notes that Collare's illegal activity was ongoing at the time of Williford's arrest, the hotel room was not in Williford's name and he was not the only person occupying the hotel room, the heroin was not found on Williford's person, and Williford was not in the hotel room when the heroin was found.  (Doc. 60 ¶ 2).  Without more, these facts are insufficient for us "to infer more than the mere possibility" that Collare planted the heroin.  *Iqbal*, 556 U.S. at 679.

Additionally, Williford challenges the statements in Collare's affidavit of probable cause regarding the way in which the drugs were packaged, alleging that Collare's testimony at trial differed and therefore the statements in the affidavit were false.  (Doc. 60 ¶ 5-6).  To state a claim for a lack of probable cause due to false statements, a plaintiff must establish: "(1) that the officer, with at least reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and (2) that those assertions or omissions were material, or necessary, to the finding of probable cause." *Pearce v. Forest Hills Borough*, 2025 WL 1220355, at *5 (W.D. Pa. Apr. 28, 2025) (citing *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017)).  To have acted with reckless disregard, "the affiant must have entertained serious doubts as

to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Andrews*, 853 F.3d at 698.

Williford makes much of the fact that the heroin produced at the controlled buy allegedly had black rubber bands around it, and the heroin found in the hotel did not. (Doc. 60 ¶¶ 6-7). He appears to assert that, standing alone, this assertion necessarily means that Collare's testimony at trial—that the heroin from the controlled buy was packaged the same way as the heroin in the hotel room—was false. (*Id.*). But these allegations ignore Collare's testimony that the heroin from the hotel room and the heroin from the controlled buy were both "wrapped up in the sandwich bags and tied[,]" which Collare stated he had only ever seen twice—during the controlled buy and at the hotel room. (Doc. 60-1 at 54). Williford's bare assertion that Collare "changed up his story and lied" at trial is insufficient to support his claim that Collare lacked probable cause to arrest and prosecute him.

Thus, Williford has not alleged sufficient facts for us to infer Collare's statements were in reckless disregard of the truth and has failed to allege those statements were material to the issuance of the arrest warrant. Williford provides no additional facts to support his

claims other than his own beliefs that Collare was "always corrupt" and a "dirty cop" because of his unrelated criminal activity. (Doc. 60 ¶¶ 4, 8). Such assertions are conclusory allegations that without additional factual support suggesting that Collare acted improperly in Williford's case are insufficient to show Williford's claims are plausible.

Williford's amended complaint therefore fails to state a claim for false arrest, false imprisonment, and malicious prosecution, so his complaint must be dismissed. While we recognize that Williford is a *pro se* litigant and generally would be entitled to an opportunity to amend his complaint, *see Fletcher-Harlee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 253 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), Williford has been granted several opportunities to amend and still fails to state a claim upon which relief can be granted. Accordingly, we will dismiss Williford's amended complaint with prejudice.

## IV.    Conclusion

For the foregoing reasons, the defendant's motion to dismiss (Doc. 61) is GRANTED, and this action will be DISMISSED WITH PREJUDICE.

An appropriate order follows.


_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge


Dated: July 2, 2025